**GANLEY et al. v. WALLACE, Secretary of Agriculture.**

**LEIGH v. SAME.**

Nos. 62521, 62536.

District Court of the United States for the District of Columbia.

Oct. 29, 1936.

116

Frederick Stohlman, George A. Cassidy, Jr., Sefton Darr, and Louis I. Obergh, all of Washington, D. C., for plaintiffs.

Leslie C. Garnett, U. S. Atty., of Washington, D. C., John Dickinson, Asst. Atty. Gen., and John S. L. Yost, A. H. Feller, and Mary C. Myers, all of Washington, D. C., for the defendant.

LUHRING, Justice.

The plaintiffs are dairy farmers and produce milk for sale and consumption in the District of Columbia marketing area, which embraces the territory within the boundary lines of the District of Columbia. Those of the plaintiffs named in Equity No. 62521 are residents of the state of Maryland and the milk sold by them is produced in that state. The plaintiff in Equity No. 62536 resides in the state of Virginia, and the milk sold by him is produced there. Each of the plaintiffs is licensed by the Health Department of the District of Columbia to produce milk for shipment to and sale in the District.

The plaintiffs in Equity No. 62521 ship and sell their milk to the Highland Farms Dairy of Washington, D. C., under and by virtue of a written contract now subsisting between each of said plaintiffs and said dairy, whereby the dairy agrees to accept all milk within certain specified quantities, which the plaintiff consigns or causes "to have consigned" each day to the dairy, at a certain definite and fixed price per gallon.

The plaintiff in Equity No. 62536 for the past three and a half years has sold his entire production of milk to the Model Farms Dairy, Inc., of Washington, D. C., under a contract which provides that the dairy will accept said milk and pay for said entire production on the basis of 60 per cent. of said milk delivered at the prevailing market price for basic milk plus differentials and premiums and 40 per cent. at the prevailing market price for surplus milk, with a minimum of fifteen cents per gallon for 4 per cent. milk.

On the 17th day of September, 1936, the Secretary of Agriculture, by virtue of the authority conferred upon him by the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 601 et seq., promulgated an "order regulating the handling of milk in the District of Columbia Marketing Area," which became effective at 12:01 a. m., E. S. T., September 21, 1936.

By the terms of this order all milk received by the handlers or distributors was classified, and minimum prices were fixed to be paid to associations of producers and to producers therefor. The order required periodic reports to be made by the handlers with respect to the quantity of milk or cream received and sold, including also the net amount paid to the producer, with the prices, premiums, deductions, and charges involved, together with a showing of the portion of such delivery which was in excess of the base of the producer.

The order also made provision for the determination of uniform prices to be paid to the producer, and fixed a time and method of payment. The order created an agency to administer the order designated as a market administrator, and made provision for the payment of the expenses of administration by requiring each handler "who is not an association of producers" to pay "on or before the 15th day after the end of each delivery period," to the market administrator "a sum not exceeding 2 cents per hundredweight with respect to all Class I milk purchased by him during such delivery period from producers, or an association of producers, or produced by him, the exact amount to be determined by the Market Administrator subject to review by the Secretary."

The bills were filed by the plaintiffs on the 20th day of September, 1936, and each bill challenges the validity of the order on constitutional grounds, and seeks an injunction both pendente lite and permanently to enjoin the Secretary of Agriculture and the market administrator from carrying out and enforcing its terms and provisions. Rules to show cause were issued September 30, 1936, returnable October 8, 1936, requiring the defendants to show cause why an injunction pendente lite should not issue in conformity to the prayers of the bills. Returns to the rules were filed by the defendants on October 8, 1936. Affidavits were filed by the parties, and, by consent, the cases were consolidated for hearing on the question of the sufficiency

of the bills and the issuance of an injunction pendente lite.

At the outset it is urged by the defendants in the returns to the rules to show cause that "the plaintiffs have no standing to maintain the suit" because (a) "neither the Agricultural Adjustment Act nor the order * * * requires the plaintiffs or any of them to do anything or to refrain from doing anything," and (b) that no penalty is provided by the act or order which may be enforced against the plaintiffs or any of them by the defendants or by any other person.

It clearly appears from the allegations of the bills and the exhibits thereto that the plaintiffs are producers of milk which is sold and distributed in the so-called District of Columbia marketing area; and that the Secretary of Agriculture, having reason to believe that the issuance of a marketing agreement or order with respect to the handling of milk in this area would tend to re-establish prices of milk to producers of milk in such area at a level with the prices prevailing in a base period of August, 1924, to July, 1929, gave notice to these producers and others interested that a hearing would be had on the 20th day of July, 1936, on a proposed agreement and order, regulating the handling of milk in such area, and that at such time all interested parties were afforded an opportunity to be heard.

The order here involved was promulgated after this hearing, and directly affects these plaintiffs. It not only classifies their production into two classes, that is in class I and class II milk, notwithstanding that the milk comes from the same herd and is of the same quality, but the order also limits the quantity of class I milk, which they may sell at a fixed minimum price. The order also prescribed the method for determining the price to be paid for their class II milk, and provides: "That the amount paid shall not be less than the equivalent of the standing offer of the Maryland-Virginia Milk Producers' Association to buy milk or cream for sale to manufacturers of ice cream sold at wholesale, on file with the Market Administrator on the date of such invoice." It is true that the order does not in terms compel the producer to do, or refrain from doing, any act. However, if he desires to sell, or contract to sell, his milk in the District of Columbia, or as here, to continue to sell the same, he must sell to a handler who is required, under a penalty of a fine of not less than $50 or more than $500, to comply with the order.

The case of Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238, involved the act of September, 1918 (40 Stat. 960, c. 174), providing for the fixing of minimum wages for women and children in the District of Columbia, and answers the contention of the defendants that the plaintiffs have no standing to maintain the suit. In that case a Mrs. Lyons, a woman of 23 years of age, was employed by the Congress Hall Hotel as an elevator operator at a salary of $35 per month and two meals a day, but the hotel company was obliged to dispense with her services by reason of the order of the Minimum Wage Board and on account of the penalties prescribed by the act for its violation. The act did not require Mrs. Lyons to do anything or refrain from doing anything, nor was she subject to any penalty. Nevertheless, upon her petition, Mrs. Lyons was granted an injunction on the ground that the act was unconstitutional in that it interfered with the freedom of contract included within the guaranties of the due process clause of the Fifth Amendment. The court said (261 U.S. 525, at page 554, 43 S.Ct. 394, 400, 67 L.Ed. 785, 24 A.L.R. 1238): "It is simply and exclusively a price-fixing law, confined to adult women (for we are not now considering the provisions relating to minors), who are legally as capable of contracting for themselves as men. It forbids two parties having lawful capacity—under penalties as to the employer—to freely contract with one another in respect of the price for which one shall render service to the other in a purely private employment where both are willing, perhaps anxious, to agree, even though the consequence may be to oblige one to surrender a desirable engagement and the other to dispense with the services of a desirable employee."

See, also, the opinion of Mr. Justice Van Orsdel in the same case, Children's Hospital v. Adkins et al. (Lyons v. Adkins), 52 App.D.C. 109, 284 F. 613, 50 Wash. Law Rep. 721; and, also, Morehead v. People of State of New York, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347, 103 A.L.R. 1445, decided June 1, 1936.

These plaintiffs, as we have seen, have contracted for the sale of their milk for a certain definite price. This price is fixed and determined by the parties. These contracts are abrogated by the order. Fur-

thermore, the prices fixed by the order are not the same as those agreed upon. It is to be noted also that the power and authority to fix a minimum price for class II milk is delegated to the Maryland-Virginia Milk Producers' Association. The standing offer of this agency for class II milk regulates the price of that milk.

The court is of the opinion that the plaintiffs do have "a standing to maintain the suit."

The sufficiency of the bills is further challenged on the grounds that the facts alleged do not show that the plaintiffs will suffer irreparable injury or other damage by reason of the provisions of the act and order; and also that the bills fail to allege facts showing that the dairies will comply with the order and breach their contracts with the plaintiffs, and finally that there are no allegations showing that plaintiffs do not have an adequate remedy at law.

It is urged that the plaintiffs cannot suffer any injury, since the order fixes only a minimum price which the handler must pay to the producer, and that the plaintiffs have a right to demand and receive a higher price. This contention overlooks the fact that the purpose of the order is to establish uniform prices to be paid for the milk in this area, and ignores the finding of the Secretary of Agriculture "that the determination of uniform prices to producers and the payment of such prices through a market-wide equalization pool founded upon a base-rating plan is a fair and reasonable method of distributing to producers the proceeds of sale to handlers."

The facts alleged clearly show that the plaintiffs will suffer injury in that the prices they will receive for their milk will be less than the prices contracted for. Indeed, it is so specifically alleged in equity No. 62536 as follows: "And this petitioner will receive far less for his milk under the terms of said order than he receives at the present time under his contract with the Model Farms Dairy, Inc.," and also in equity No. 62521, "the carrying out and the enforcement of the order aforesaid will result in a substantial lowering of the net amount now received by the plaintiffs for their milk." These general allegations follow a detailed statement of the operations of the order as applied to these plaintiffs.

It is not necessary that it be alleged that the dairies will breach their contracts with the plaintiffs. The act and order have seen to that. The act prescribes a penalty of a fine of not less than $50 or more than $500 for each violation of the order and provides that "each day during which such violation continues shall be deemed a separate violation." Tit. 7, § 608c (14) U.S.C.A. The handler must comply with the order or suffer the penalty. But the plaintiffs are not subject to the whims of the handler. He may or may not comply with the order. The threatened injury to the plaintiffs is present and real and they need not wait patiently until it occurs. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468.

These plaintiffs have no adequate remedy at law. Neither did Mrs. Lyons have an adequate remedy at law. Adkins v. Children's Hospital, supra. Here an existing contract is abrogated by an order having the force of law. There the law prohibited the making of a contract ·for services at a wage less than the minimum. Furthermore, the "performance of a contract can not be compelled when it would involve a violation of the law. Hence a contract is discharged where after it has been entered into the performance is made unlawful." 13 C.J. p. 646, § 720, and ca. ci.

In considering the matter of an injunction pendente lite, the court must find that the order abrogates the contracts of these plaintiff producers and compels them to accept the terms of the order if they would dispose of their milk in the District of Columbia area, and thus deprives them of the right to freely contract for the sale of their product. The court further finds that the order with its classification and base-rating plan and price-fixing provisions controls, or at least attempts to control, the production of milk in the states of Maryland and Virginia.

It is declared by the act to be the policy of Congress "through the exercise of the powers conferred upon the Secretary of Agriculture under this title to establish and maintain such balance between the production and consumption of agricultural commodities, and such marketing conditions therefor, as will reestablish prices to farmers at a level that will give agricultural commodities a purchasing power with respect to articles that·farmers buy, equivalent to the purchasing power of agricultural commodities in the base period." Title 7, § 602 (1) U.S.C.A. The act gave the Secretary power to issue orders to persons

engaged in the handling of certain agricultural commodities, including milk, and provided that "such orders shall regulate * * * only such handling of such agricultural commodity, or product thereof, as is in the current of interstate or foreign commerce, or which directly burdens, obstructs, or affects, interstate or foreign commerce in such commodity or product thereof." Title 7, § 608c (1), U.S.C.A.

The purpose of the order as stated in the preamble is "to effectuate the declared policy to establish and maintain such marketing conditions in the handling of milk in the aforesaid area as would re-establish prices of milk to producers of milk in the said area at a level that would give such milk a purchasing power with respect to articles that such producers buy equivalent to the purchasing power of milk in the base period August, 1924–July, 1929."

The so-called "marketing conditions" which the order seeks to establish and maintain are founded upon two plans, viz.: (1) "The classifying and pricing of milk to handlers according to the use made of it and (2) the base-rating plan of equitably distributing among all producers the burden of the necessary surplus in the market." See affidavit of E. W. Gaumnitz. With reference to the first plan and the price fixed thereunder in the order, Mr. Gaumnitz said: "This price appeared sufficiently high at that time to assure a volume of milk sufficient to meet market requirements, produced in conformity with the health regulations applicable to such milk, and to be feasible in view of the current consumptive demand in the market, at the same time being below the parity level above referred to." In other words, the price fixed was such as to induce the dairy farmer to produce sufficient milk to supply the demand, notwithstanding the price fixed was below the parity level. Further in the affidavit referred to, the affiant in discussing plan No. 2, the base-rating plan, said: "If one producer greatly increases his production he can increase his share of the limited fluid milk market only by reducing the share of other producers. The base-rating plan recognizes this problem and is a means whereby the burden of the surplus is divided equitably among producers."

The question here is not an open one. It has been settled by the Supreme Court of the United States. Congress may not under the commerce clause (art. 1, § 8, cl. 3) regulate the production of milk or any other farm commodity. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L. Ed. 477, 102 A.L.R. 914; Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513. See, also, Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. A similar question was presented in the case of U. S. ex rel. v. Buttrick Company, 15 F.Supp. 655, 658, in the District Court of the United States for the District of Massachusetts, decided July 23, 1936. In that case, the bill was brought against the distributors or handlers of milk in Boston to compel them to comply with an order of the Secretary of Agriculture regulating the handling of milk in the Greater Boston area. Judge Brewster, in sustaining the motion to dismiss, said:

"I do not decide whether Congress has the power to enact legislation authorizing the Secretary of Agriculture to impose regulations upon the sale of milk in interstate commerce. I only decide that, as yet, Congress has not enacted such legislation. What it has done is to pass a law intended to control and regulate the agricultural industry, to the end that the agricultural purchasing power may be increased. The Supreme Court has definitely adjudged such a purpose to be beyond the granted powers of the federal government. The provisions for orders by the Secretary of Agriculture were merely a means to effectuate the declared purpose of the act. The purpose failing, the means failed with it. * * *

"Finally, I conclude that it is not possible to wrest from the outlawed statute separable provisions which can stand as a legislative enactment authorizing the orders involved in this suit."

The original Agricultural Adjustment Act (48 Stat. 31) was also questioned with respect to the control and regulation of milk, and the so-called base-surplus plan was considered. See Edgewater Dairy Co. v. Wallace (D.C.) 7 F.Supp. 121; Columbus Milk Producers' Ass'n v. Wallace (D. C.) 8 F.Supp. 1014, holding milk licenses unenforceable on the ground that Congress is without power to regulate the production of milk. See, also, United States v. Seven Oaks Dairy Co. (D.C.) 10 F. Supp. 995.

It follows that the rules to show cause must be made absolute and that injunctions pendente lite issue.

It is so ordered, and counsel will prepare proper decree.